EASTERN DIS.
May, 1832.

BAUDUC'S
SYNDICS
vs.
NICHOLSON
ET AL.

---

BAUDUC'S SYNDICS *vs.* NICHOLSON ET AL.

APPEAL FROM THE COURT OF THE FIRST DISTRICT.

The United States courts have no right to seize property already transferred by state laws from the debtor in execution, although the syndics may not have taken possession of the property at the time of the seizure.

With respect to repairs and necessaries in the port or state to which the ship belongs, the case is governed altogether by the municipal laws of that state.

When the proceedings are *in rem,* every one who could have asserted a right to, or in the property libelled, was a party to the suit; the judgement is a complete bar to all right which could have been exercised there, and forms *res judicata* against all the world who had a claim on the property.

The facts are fully stated in the opinion of the court, delivered by PORTER, J.

This case has already been before the court, and was remanded from a defect in the pleadings. See 2 *L. R.* 200.

EASTERN DIS.
May, 1832.

BAUDUC'S
SYNDICS
vs.
NICHOLSON
ET AL.

This action is brought to have the steamboat Florida sequestered, and to obtain damages from the defendants for the illegal seizure of her. The plaintiffs state, that she belonged to one Bauduc, who made a cession of his property on the 30th July, 1830, which cession was accepted by the judge. That, subsequent thereto, and in contempt of these proceedings, the defendant, Nicholson, marshal of the United States for the Eastern District of the state of Louisiana, did, under color of a pretended admiralty process, on the 6th August, 1830, seize and take into possession the said boat. The seizure being made in virtue of a pretended admiralty process, issued at the suit of Victor David, a citizen of the state of Louisiana, who had been placed on the bilan of the insolvent as one of his creditors.

The defendant, Nicholson, pleaded,

1. The general issue.

2. The execution of a writ issuing from the District Court of the United States, commanding him to seize the steamboat Florida.

3. A denial of the boat being in possession of any person acting under the authority of the First District Court of Louisiana, or of any other court of the state, or that she was virtually or constructively in the custody of the law thereof.

4. The proceedings in the District Court of the United States to which a provisional syndic of the insolvent, together with other claimants were parties; the decree of the court; a sale by the defendant in virtue of this decree, and the payment of moneys made under it into court.

5. A denial that the plaintiffs sustained any damage by the sale, the boat having brought her value at public auction, and the proceeds having been paid over to creditors of the insolvent.

The other parts of the answer are argumentative, and consist, principally, in deductions of law from the facts already stated ; the defendant, however, avers, that the attempt to make him amenable to a court of the state of Louisiana, for his obedience to a special writ of the District

Court of the United States, is repugnant to, and a violation of, the laws of the United States.

BAUDUC'S
SYNDICS
vs.
NICHOLSON
ET AL.

David, the other defendant, pleaded,

1. The general issue.

2. That he filed a libel in the District Court of the United States for the Eastern District of Louisiana, on the sixth August, 1830, against the steamboat Florida, for supplies furnished by him to said boat. That on the filing this libel, admiralty process issued against her; that the usual proceedings were had ; that the provisional syndic of the insolvent made himself a party to the suit; that the boat was ordered by the court to be sold, and that the proceeds were distributed to the defendant and the other claimants.

3. That these proceedings *in rem* formed the plea of *rem judicatem* against all persons who might hereafter set up any claim or interest in the boat.

4. That the plaintiffs sustained no damage by the proceedings in the admiralty court and the sale of the property under its decree.

5. That this suit, if maintained, is repugnant to the constitution and laws of the United States.

6. That the defendant had no legal notice of the proceedings alleged to be had in the District Court of the State of Louisiana, wherein Bauduc made a cession of his property to his creditors, nor was he a party thereto.

On these issues the parties went to trial in the court below. There was a verdict in favor of the defendants, and the plaintiffs appealed.

In the case of *Schroeder's Syndics* vs. *Nicholson*, we considered, with as much attention as in our power, the pretension claimed for the United States courts to seize property already transferred by state laws from the debtor in execution. We thought it could not be legally done. That case is in no important respect to be distinguished from this now before us on the merits. True, in that instance, the property had been taken possession of and was in the hands of the syndics, when the marshal seized it ; but the want of that circum-

The United States Courts have no right to seize property already transferred by state laws from the debtor in execution, although the syndics may not have taken possession of the property at the time of the seizure.

EASTERN DIS.
May, 1832.

BAUDUC'S
SYNDICS
vs.
NICHOLSON
ET AL.

stance in no manner weakens the rights of the transferees. Delivery is certainly one mode by which municipal law very frequently provides that the transfer of property shall be complete, and no longer susceptible of sale by the vendor, nor of seizure by his creditors. But this is entirely a matter of internal legislation, and though delivery be one mode of accomplishing this object, it is not the sole one. The law may provide other means by which the right and title shall pass, and the legislature of Louisiana has so provided in relation to property situated as this was, at the time the marshal seized it. By an act of the general assembly of this state, passed the 29th March, 1826, it is enacted, that on a debtor presenting a proper petition to obtain the relief afforded by our insolvent laws, the judge shall accept the cession of property, and that after such cession and acceptance, all the property shall be fully vested in his creditors, and shall not be liable to be seized, attached, taken, or levied on. The proceedings in this case being by a suit *in rem*, and in an admiralty court, does not weaken the right thus acquired. More especially in a case like the present, when the authority to libel the vessel was derived exclusively from the laws of the state. The Supreme Court of the United States have declared, in conformity with the well known rule on this sub-

*With respect to repairs and necessaries in the port or state to which the ship belongs, the case is governed altogether by the municipal laws of that state.* ject, that in respect to repairs and necessaries in the port or state to which the ship belongs, the case is governed altogether by the municipal laws of that state, and no lien is implied unless it be recognized by these laws. Here the boat belonged to the state. The supplies were furnished in New-Orleans, and the local law alone gave the privilege. But this law has also declared that the lien so given cannot be the ground of seizure or attachment where the owner of the vessel has become insolvent, and his property is transferred to his creditors. It would, we apprehend, be a case of the first, the very first impression, for the courts of one government to make the laws of another, their authority, and sole authority, for acting judicially, and yet refuse to give these laws their full effect, to take the general rule and reject the exception.

EASTERN DIS: *May*, 1832.

BAUDUC'S SYNDICS *vs.* NICHOLSON ET AL,

To seize on one part of the legislation as a justification for the exercise of jurisdiction, and refuse effect to that part of the law which limited the jurisdiction. The eminent member of the Supreme Court of the United States, who presides in the Circuit Court at New-York, does not so understand the law, and his duties under it. In a case somewhat like this, where the lien arose under a state law, he uses this emphatic language, "the District Court is bound as much by the state laws as the state tribunals, and must give relief in conformity to them." 1 *Payne*, 626. 4 *Wheaton*, 443.

And such, we cannot but sincerely think, must have been the conclusion to which the learned judge who rendered this decree would have come, had the facts of the case been fully brought before him, and the cause argued as it has been in this tribunal. But the plaintiffs, after going into the District Court, and making opposition, withdrew it, and now call on us to try the matters which were contested there. This we cannot do. We think the plea of *res judicata* fully sustained. The proceedings were *in rem*. By the monition, every one who could have asserted a right to or in the property libelled, was a party to the suit, and the judgement, consequently, is a complete bar to all rights which could have been exercised there.

It remains only to notice the grounds on which this case was attempted to be taken out of the plea of *res judicata*. First, it was said the property was in custody of the law, and where courts have concurrent jurisdiction, that, first seized of the matter has the right to go on and adjudicate. This is true; but we do not see how the transfer, in this instance, placed the property more in the custody of the law, than any other which is legally alienated. It was not in possession of an officer of the court; no seizure had been made of it.

Next, it was said the libellant, a citizen of Louisiana, was responsible for bringing suit in the admiralty court, and the marshal was responsible for not returning the facts truly to it. We think all inquiry on this ground is precluded by the judgement. So long as it stands unreversed, it must be considered

*When the proceedings are in rem, every one who could have asserted a right to or in the property libelled, was a party to the suit; the judgement is a complete bar to all right which could have been exercised there, and forms res judicata against all the world who had a claim on the property.*

as legally and rightfully given, and a judgement so rendered cannot be made the ground for damages against the party in whose favor it was given.

Lastly, it was urged that these proceedings completely defeat, and render null, the laws of the state of Louisiana, on a matter in which her jurisdiction is undoubted. This is no doubt true, and it is the more to be regretted, as there seems no motive for producing a collision between the state and federal authorities, the law of the former affording a complete remedy to the creditor, and preserving his lien, if he goes into the *concurso.* But the delicate questions which must arise in the conflict of separate and independent jurisdictions under our federal system of government, are best treated with by yielding to each court its full rights. The settled principles of law give to the judgement *in rem,* the authority of the thing judged, against all parties to it, that is, against all the world who had a claim to assert on the property: these principles must govern this case, be the consequences what they may.

It is, therefore, ordered, adjudged and decreed, that the judgement of the District Court be affirmed, with costs.

*Seghers,* for appellant.    *Slidell,* for appellee.